UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA WESTMAN<br><br>    Plaintiff,<br><br>vs.<br><br>AL FRANK ASSET MANAGEMENT INC., et al.<br><br>    Defendant. | Case No. SACV 11-935-JST (RNBx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL** |

## I. Introduction

Plaintiff Tina Westman ("Plaintiff") filed this action against Al Frank Asset Management, Inc. ("Defendant") alleging that Defendant violated the federal Fair Labor Standards Act ("FLSA") by misclassifying her as an exempt administrative employee. Specifically, Plaintiff asserts that her position was primarily a clerical, support position. Plaintiff further alleges that the failure to properly classify her was willful. Accordingly, Plaintiff seeks (1) overtime compensation at the overtime rate of one and a half times her regular rate for alleged hours worked over 40 hours in a week for a three-year period, and (2) liquidated damages in the amount of $84,000.

1

Defendant argues that Plaintiff was properly classified as exempt because (1) Plaintiff's primary duties related to the management or general business operations of the Defendant, and (2) Plaintiff exercised independent judgment and discretion with respect to matters of significance. In addition, Defendant asserts counterclaims against Plaintiff alleging breach of contract, fraud, and a violation of the Computer Fraud and Abuse Act ("CFAA"). These claims derive from a Compromise and Release Agreement ("Agreement") that Plaintiff signed at the end of her employment in which she (1) promised to return to Defendant all records and documents relating to Defendant's business, and (2) represented to Defendant that she had received all compensation due to her as a result of her employment. In response, Plaintiff argues that any release of FLSA claims is unenforceable, that Plaintiff did not breach the Agreement, and that Defendant fails to show it was damaged in any respect.

A court trial was held on December 4 and 5, 2012. Thereafter, on January 10, 2013, the parties filed Proposed Findings of Fact and Conclusions of Law. The Court has considered the testimony of all four witnesses, all admitted exhibits, and the post-trial submissions of the parties. The following constitutes the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure. To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

**II.  Findings of Fact**

1.  Defendant's business is that of providing investment advice and strategy to clients through registered investment professionals.

2.  Plaintiff was employed by Defendant as an Operations Manager from 2006 until 2007 when she was promoted to the position of Portfolio Operations Manager. She held that position from 2007 until she was laid off in 2010.

3.  Plaintiff was paid a salary of approximately $75,000 per year.

4. Plaintiff testified that her primary duty was client account maintenance, or account reconciliation.

5. Plaintiff further testified that the steps involved in that primary duty were rote, and that her job was merely clerical in nature.

6. Plaintiff called witness Paul Osterberg as Plaintiff's supervisor to testify regarding Plaintiff's duties and responsibilities.

7. When he worked for Defendant, Mr. Osterberg held the position of Chief Operating Officer and Chief Marketing Officer. In that position, he was responsible for the marketing and operations functions.

8. At the time of his testimony, Mr. Osterberg was no longer employed by Defendant, although he maintained a consulting relationship with Defendant.

9. When Mr. Osterberg worked for Defendant, Defendant's departments included the investment management department, the marketing department, the operations department, and the financial "function."

10. Mr. Osterberg testified credibly, and without contradiction, that Plaintiff was the "head of operations." That was the term used to describe her position, not just at trial, but in contemporaneous documents as well. (*See*, *e.g.,* Exhibit 64.)

11. The operations function included managing the Advent/Axys systems, managing new and closed account processing, taking responsibility for electronic reconciliation of accounts, and managing client billing and special projects. (Exhibit 12)

12. The Advent/Axys system was the system responsible for portfolio management of the entire business. In her position as Portfolio Operations Manager, Plaintiff managed the Advent/Axys system. Plaintiff was also responsible for managing the system conversion from Advent/Axys to Advent/APX.

13. Plaintiff's most important responsibilities were to ensure that all of the necessary operations functions were handled efficiently so that Defendant's cost of discharging services would be competitive. As head of operations, "it was crucial that she ensured that [Defendant was] continuously getting better from a . . . service cost and quality perspective." (Osterberg Test., Trial Tr. at 175:23-25, Doc. 106.)

14. Plaintiff was responsible for advising executives on improvements to systems and billing processes, procedures, and policies that would make the trading process, i.e., Defendant's core business, more efficient.

15. Plaintiff was responsible for creating internal workflows and processes and training others on the workflows and processes.

16. Although Plaintiff did not have any direct reports, she had the ability and authority to delegate responsibilities to other employees.

17. Plaintiff also had signing authority, could negotiate contracts with third parties for approval by the CEO, and had the authority, and was expected, to recommend significant operational changes and improvements, particularly as they related to the Advent/Axys systems.

18. All witnesses generally acknowledged that one of Plaintiff's responsibilities involved client account reconciliation, which could take up to two hours of her day.

19. The testimony conflicted regarding the nature of Plaintiff's account reconciliation responsibilities. As noted above, Plaintiff testified that account reconciliation involved following rote steps in a pre-established procedure. On the other hand, Osterberg and Eric Hare testified that the routine aspects of account reconciliation were outsourced to a service named "IOS," which left Plaintiff to handle those aspects of account reconciliation involving research and troubleshooting any discrepancies.

20. Regardless of whether this aspect of account reconciliation amounts to an exempt responsibility, the Court finds that Plaintiff's management of the entire operations process, and particularly the portfolio management system, as described in fact nos. 10 through 17 above, constituted Plaintiff's primary duties.

21. Even before working for Defendant, Plaintiff had an understanding of the difference between an exempt and a nonexempt employee. She also took college courses that addressed employee exempt/non-exempt status.

22. At no point did Plaintiff ever indicate to anyone at Defendant that she believed she was performing non-exempt work.

23. The Court does not find Plaintiff's knowledge of exempt and non-exempt duties and her failure to indicate her belief that she was performing non-exempt duties to be legally dispositive; however, it was a factor in the Court's finding that her testimony at trial regarding the nature of her duties was lacking in credibility. Specifically, the Court believes that Plaintiff downplayed her exercise of discretion and independent judgment in running the operations of the company.

24. Defendant's expectation that Plaintiff's primary duty was to run the entire operations "function," and was not clerical in nature is supported by documents that were contemporaneous with Plaintiff's employment. *See, e.g.*, Exhibit 105-2 (noting that, in her role as Advent/Axys Systems Manager, Plaintiff was expected to "continue to take a management role and be proactive in solving issues that come up, researching solutions, managing renewals and updates and any employee training necessary.")

25. The Court finds that Plaintiff's duties predominantly consisted of non-manual office work requiring independent judgment and discretion that was directly related to the management or general business operations of the Defendant.

26. Defendant presented no evidence of damages on any of its counterclaims. (*See generally*, Defendant and Cross-Claimant Al Frank Asset Management, Inc.'s [Proposed] Revised Findings of Fact and Conclusions of Law, Doc. 109.)

### III. Conclusions of Law

1. Unless an employee is exempt from overtime, he or she must be paid for all work over 40 hours in a week at a rate of one and one-half times the employee's regular rate of pay. 29 U.S.C. § 207(a)(1).

2. An employee is exempt from the overtime requirements if he or she is employed in a bona fide administrative capacity. 29 U.S.C. § 213(a)(1).

3. The employer bears the burden of proving the exemption. *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983).

4. An employee who is employed in a bona fide administrative capacity is an employee (1) who is compensated on a salary basis at a rate of not less than $455 per

week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(1)-(3).

5. The first element, that Plaintiff be compensated by salary of not less than $455 per week, is met, as discussed in fact no. 3.

6. As to the second element, one factor that the Court considers is the "administration/production dichotomy." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002). "The administration/production distinction . . . distinguishes between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to 'running the business itself.'" *Id.*

7. Work directly related to management or general business operations, i.e., work that involves "running the business itself," includes, but is not limited to, work in functional areas. 29 C.F.R. § 541.201(b). These functional areas include, without limitation, auditing, quality control, procurement, research, internet and database administration, and similar activities. *See id.*

8. Based on the Court's factual findings, above, the court concludes that Plaintiff's primary duty involved work directly related to management or general business operations. The second element is therefore met.

9. Regarding the third element, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of work performed." 29 C.F.R. § 541.202(a).

10. "Factors to consider when determining whether an employee exercises discretion and independent judgment . . . include . . .whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a

substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances." 29 C.F.R. § 541.202(b).

11. An employee's discretion need not be unfettered. "[E]mployees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c).

12. Based on the factual findings above, the Court determines that Plaintiff exercised independent judgment and discretion as to the operations function of the business, and particularly in the management of the Advent/Axys System, which the Court determines to be a "segment" of the business. The third element is therefore met.

13. Based on the foregoing, the Court concludes that Plaintiff was properly classified as an exempt employee, is not entitled to overtime pay, and shall take nothing by way of her Complaint.

14. The Defendant, having offered no evidence of any damages arising out of any aspect of its Counterclaims, shall take nothing by way of its Counterclaims.

**Defendant is ordered to prepare and submit a judgment consistent with this order.**

DATED: April 8, 2013    _____

JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE